## LEE *v.* COOK AND COREY.

EJECTMENT.—In ejectment the plaintiff must recover, if at all, upon the strength of his own title. If the defendant can show an outstanding title in another, it will defeat the plaintiff's right of recovery.

JUDGMENT : LIEN.—Where an execution is issued, and levied on real estate while the lien of a judgment thereon is in force, and a sale under the execution is properly made, and a deed, executed to the purchaser, such deed will relate back to the date of the judgment, and the title which the defendant had at that time will pass.

ERROR to the District Court of Uinta County.

This was an action brought for the recovery of real property in the district court of Uinta county. Plaintiff claims under a deed dated October 26th, 1875, but the acknowledgment and recording was not until November 15th, 1875, so that for the purposes of this controversy the date of the deed is November 15th. In addition to the deed he shows possession at the date of the deed, and for some time prior thereto, in his granter Amanda E. Foye, and Arnold L. Foye, her husband, and upon that rests.

VOL. II.—20.

The defendants show a sheriff's deed to the property to Harvey Booth, under whom defendants occupy the premises, issued on a sale of the property in controversy by the sheriff of Uinta county, by virtue of a judgment and execution in a case of *John W. Anthony* v. *Arnold L. Foye and Amanda E. Foye.* The judgment was rendered July 17th, 1875, which was the 12th day of the term, the same commencing on the first Monday of July. The judgment was a money judgment against the said defendants Foye, and also commanded the sale by the sheriff of lands covered by lien. The sale was made December 27th, 1875, and execution issued November 13th, 1875. On February 25th, 1876, the said sale was confirmed and deed ordered. The date of the sheriff's deed is April 9th, 1876.

The case was tried in the court below without a jury; the findings were for the defendants (Cook and Corey,) and judgment was rendered in their favor for costs.

*W. W. Corlett*, for plaintiff in error.

The purchaser at a sheriff's sale must show not only his deed, but a judgment and levy in addition. *Carlisle* v. *Langworth*, 5 Ohio, 368; Rover on Judicial Sales, page 213; *Allen* v. *Parisel*, 3 Ohio, 188; *Wheaton* v. *Sexton*, 4 Wheaton, 503; *Ludlow* v. *Barr*, 3 Ohio, 388; *Newman* v. *Cinn*, 18 Ohio, 323; *Fowler* v. *Whitman*, 2 Ohio S., 270.

After the plaintiff established a *prima facie* right to the land, the defendants were bound to show affirmatively a better right in order to defeat the plaintiff's cause of action. *Roads* v. *Symes*, 1 Ohio, 283; *Styles* v. *Murphy*, 4 Ohio, 92; Freeman on Judgments, pages 2, 26–30. Compiled Laws of Wyoming, pages 82–84, secs. 377, 378, 381, 389–391, 394; also, pages 69, 70, secs. 275, 279, 280. The execution did not conform to the judgment, and the sale made under it is therefore void. Rover on Jud. Sales, secs. 570, 572; *Rider* v. *Alexander*, 1 Chips, 274; *Butler* v. *Haynes*, 3 N. H., 21; *Cooper* v. *Sunderland*, 3 Clarke (Iowa) 114; *Frazer* v. *Stewards*, 7 Iowa, 346.

*E. A. Thomas and C. N. Potter*, for defendants in error.

Without reference to the fair presumption as to date of levy, the land in controversy was subject to the payment of the judgment in *Anthony* v. *Foye*, before the transfer by Foye to Lee, a judgment being a lien upon all the lands and tenements of the judgment debtors from the first day of term at which judgment was entered; and the judgment in *Anthony* v. *Foye* became a lien on the said property from the first Monday of July, 1875, and was a subsisting lien at the time of the pretended transfer to Lee, and title under sheriff's deed dated back to the first Monday of July, 1875. Compiled Laws Wyo., page 88, sec. 427 ; Freeman on Judgments, sec. 338 ; Rover on Jud. Sales, 2d ed., secs. 1020 and 1025 ; *Kirk* v. *Vonberg*, 34 Ill., 440 ; *Riddle* v. *Bryan*, 5 Ohio, 48, 55 ; *Conard* v. *The Atlantic Ins. Co.*, 1 Pet., 443 ; *Union Bank of Mo.* v. *Maynard*, 51 Mo., 548.

As the action of ejectment rests upon the present right of possession of the plaintiff, if the plaintiff or his grantor can be shown to have parted with their right of possession in any way, this is a good defense, which even a *trespasser* may use, although it amounts to establishing title in a stranger ; or, in other words, any defendant, whether *he be* or be not a trespasser, may show an outstanding title in a third person, derived through the plaintiff or his grantor, inasmuch as such a title would defeat plaintiff's right to possession, and this although defendant does not connect himself with such title. *Mallet* v. *Uncle Sam &c. Co.*, 1 Nev., 188 ; *Dyson* v. *Bradshaw*, 23 Cal., 528 ; *Bird* v. *Lisbros*, 9 Cal., 1 ; *Bruce* v. *Mitchell*, 39 Me., 390 ; *Jackson* v. *Harrington*, 9 Cowen, 86 ; *Bird* v. *Dennison*, 7 Cal., 297.

SENER, C. J. This case was an action brought by the plaintiff in error here as plaintiff in the court below, held in and for the county of Uinta, against the defendants in error here, who were the defendants below, to recover the possession of a lot of land in Evanston, Uinta county, in this

Territory, and damages for the detention thereof. The petition which originated the case in the court below, is in the nature of an action of ejectment, and for all purposes has been and should be treated as such.

The defendants in their answer admit their possession and detention of the premises at the time the action was brought, but deny ownership in the plaintiff, and his right of possession and recovery in this action.

The case was tried in the court below without a jury, and the findings of the court below were for the defendants, and judgment was rendered for the defendants for their costs. The plaintiff in error has brought his case here properly, to the end that the judgment of the court below may be reviewed and vacated, reversed or modified, if to this court there shall seem to be error requiring it to do so.

The plaintiff in the court below, to maintain his case, produced a deed from A. L. Foye and Amanda E. Foye, his wife, dated October 26, 1875, and recorded November 15, 1875, for the lot and buildings in controversy. He also offered one C. M. White, to prove that Amanda E. Foye was the owner of this property on the 15th of November, 1875, an effort or effect to nullify the deed just recited, for the force of the deed of October 26, 1875, recorded November 15, 1875, seems to us to put the title of the property on the 26th of October 1875, in A. L. and A. E. Foye, and not in A. E. Foye alone, and that the title of A. L. and A. E. Foye passed as of that date to Alfred G. Lee as between themselves, and vested as of October 26, 1875 in Alfred G. Lee as between Lee and the Foyes, whatever they then had to pass of title in and to said property. In so far as this testimony was offered to show that A. L. Foye had no ownership in this property, we think it unimportant for Lee's side of the case. If A. L. Foye had no right in this property and Amanda E. held it as a *feme sole*, why then should A. L. Foye have been joined with her in the conveyance? Was it necessary? Clearly Lee thought so, for we find him relying upon a deed in this cause to which A. L. Foye was

a party—that dated October 26, 1875, and recorded November 15, 1875.

In all proceedings in ejectment the authorities lay down. three essential things to be alleged and proved :

I. The plaintiff must prove that he has the legal estate in the premises at the time of the demise laid in the declaration (here the petition.)

II. That he had also the right of entry.

III. That the defendants or those claiming under them, were in possession at the time the declaration (here the petition) in ejectment was served.

The first proposition necessarily implies that the plaintiff should set forth his legal title in his declaration (petition) i. e. his *demise*, the conveyance under and by virtue of which he relies to maintain his action. This he failed to do. The defendants did not demur, but filed a paper asking for a more explicit declaration, but this they afterwards withdrew and filed their answer, so that they apparently waived this defect, and so the plaintiff without raising by the proper pleading a right to offer his deed of October 26, 1875, recorded November 15, 1875 in evidence, yet offered it and it was received without objection in evidence.

The second proposition for the plaintiff to establish was his right of entry at the time of the demise laid in the declaration. And here the plaintiff absolutely offered a witness to prove that Mrs. Foye was the owner of the premises in question on that day, an effort in effect to nullify the deed of October 26, 1875, and certainly clouding by its statement the ownership of that day, if parol testimony was admissible for this purpose or for the purpose of impeaching as between Lee and the Foyes, the recital of the deed of November 15, 1875, whereby the property in controversy was sought to be conveyed to Lee; but relying on the deed as we must, let us grant that Lee had the right of entry to the premises in controversy, though it may have been that *eo instanti* upon the sale by the Foyes to Lee, that Lee may have carved out a lease for one year, and was not entitled then to the

possession, and Mrs. Foye was by virtue of that lease made after ten o'clock of that day, for the deed is shown to have been recorded at ten o'clock of that day. And White, in speaking of Mrs. Foye's ownership, is largely lacking in exactness of statement as to when Mrs. Foye's possession began and ended. Was he trying to show for Lee's benefit that Mrs. Foye was the owner and in possession before Lee's deed became operative at ten o'clock of November 15, 1875, or was he trying to prove for the defendant's advantage that Lee had the title, but had parted with the right of entry? We think neither view material, the deed must speak for itself as between Lee and the Foyes, and we will hold that Lee had the right of entry.

The third proposition of law was assented to by the defendants, viz.: that they were in possession of the premises at the time the declaration, or petition in ejectment, was served.

The plaintiff, after himself giving some testimony which it is not necessary here to refer to but will be noticed hereafter, rested his case. Then the defendants' turn came. Now we must remember that in ejectment, the plaintiff in every form recovers only on the strength of his own title. And so the defendants offered to show an outstanding legal title in another to defeat the plaintiff's right of recovery, as undoubtedly they had a right to do, without claiming under it or deducing it to themselves, either by legal conveyance or operation of law. Greenleaf on Evidence, 5 edition, 2 vol., sec. 331.

To do this, they offered in evidence a deed made by the sheriff of Uinta county, dated April 19, 1876, conveying the same property claimed in the plaintiff's declaration, or petition, to one Harvey Booth for the sum of one thousand six hundred and fifty dollars. The plaintiff objected to the introduction of this deed stating that the defendant had not shown the proceedings to be regular in the case of *Anthony* v. *Foye* out of which the deed came, or that the court had jurisdiction of the person of the Foyes or the

subject matter of that suit, or authority to render judgment therein.

We think the objections of the plaintiff below were properly overruled, and that the deed was properly admitted in evidence. By the statute law of this Territory, General Laws of Wyoming, p. 92, sec. 444, it is expressly provided that, "the deed, such an one as this, made by a sheriff in pursuance of an execution, shall be sufficient evidence of the legality of such sale and the proceedings therein until the contrary be proved, and shall vest in the purchaser as good and as perfect an estate in the premises therein mentioned as was vested in the party at or after the time when such lands and tenements became liable to the satisfaction of the judgment. This statute then proceeds to state what the recital of such a deed shall be. Closely inspecting the deed in this case, Lee, if a stranger to it until recorded, as will be presently shown that he was not, could only find that one essential was lacking, viz., that it failed to state the amount of the judgment under which the sale was made in virtue of which the title was alleged by this deed to pass to Booth. This objection or lacking requisite of the deed as against a stranger, would have been caused, we think, in this case by the introduction of so much of the proceedings as were given in evidence in this case as bear upon the question of the regularity of the judgment and sale to Booth, and of the binding force and validity of the deed under which Booth took. In these proceedings thus introduced, the amount of the judgment is shown to have been the sum of one hundred and thirty-four dollars and thirty cents, and costs; and in these very proceedings this same Alfred G. Lee, as we take it, appeared and objected to the confirmation of this sale and the consequent deed to Booth. He had then his day in court, was heard, and his objection overruled. He excepted, but either became satisfied with the court's ruling or having failed to seek to have that judgment reviewed in this court has lost his opportunity to do so by the running of the statute fixing the time within

which writs of error may be brought here for that purpose, and in either case the action then and in that proceeding has become final as to him. But it may be said that possibly the A. G. Lee mentioned in the *Anthony* v. *Foye* proceeding is not the same A. G. Lee who is the plaintiff in error here, and who was the plaintiff below. The answer must be to this that A. G. Lee was in court in this proceeding, and made no attempt to rebut the very evident presumption, that the A. G. Lee of the *Anthony* v. *Foye* case was the A. G. Lee of this case, and as the purpose and legal effect of the introduction of the proceedings of sale under the *Anthony* v. *Foye* judgment was to defeat Lee's claim in the court below, we are forced to the conclusion by legal presumption that A. G. Lee of the *Anthony* v. *Foye* judgment is the A. G. Lee of this case.

A great deal was said about the necessity of showing when the levy was made. Now a levy is made for the purpose of acquiring a lien. The deed of the sheriff and the proceedings brought into this case showing the judgment of *Anthony* v. *The Foyes* and the sale thereunder, or in consequence thereof, and in virtue of which Harvey Booth acquired title, which is the outstanding title in a third party set up by the defendants in the court below and relied on here to defeat the plaintiff's recovery, shows that whole proceeding to have been for the purpose of enforcing a mechanic's lien, which lien by the recital of the sheriff's deed which were neither contradicted nor sought to be contradicted, dated from some time in Sept. 1873, and of course must have existed at the time the judgment was rendered, because it was in virtue and by reason of such lien that judgment was rendered, and yet it was really contended in argument that there was no proof that the Foyes owned at the time the judgment was rendered on the 17th of July 1875, the property afterwards sold by the sheriff and now in controversy in this case. It seems to us as beyond any dispute that the Foyes were the owners of this property subject to the lien, at the time the judgment upon the lien

was rendered, to-wit: July 17th, 1875. The very first section of the mechanics' lien act, General Laws of Wyoming, p. 459, approved Dec. 1, 1871, under which the *Anthony* v. *Foye* proceeding was had, provides that any person who shall perform any labor, etc., * * * on any house, mill, etc., by virtue of a contract expressed or implied with the owner thereof or his agent, shall have a lien to secure payment of the same upon such house, etc., etc., and the lot of land upon which the same shall stand." The very fact that the court was ascertaining a mechanic's lien on the 17th day of July 1875, made it by force of irresistible conclusion ascertain the lien as existing on that day as a pre-requisite to its right to enter judgment to enforce the lien and to ascertain the lien. It had under the statute to ascertain that the Foyes were the owners of the property at the time the lien was created, and so ascertaining it further necessarily found that it was continuing and in existence on the 17th day of July 1875, and that is all-sufficient to fix the lien of the Foye judgment as anterior to the sale to Lee and so superior to it, because *prior tempore, potior jure.* This same act in section 6, further provides for bringing actions to obtain judgments and declares that "the lien shall continue until such suit or suits be finally determined and satisfied."

From what has thus been stated, it will, of course, hold that this court does not consider the judgment of *Anthony* v. *The Foyes*, as purely a money judgment. It was, of course, proper and necessary, indeed indispensably so, that the court should ascertain, before attempting to execute the lien, that there was in fact any subsisting lien, and the amount of it reduced to dollars and cents; the parties must be called into court, the lien judicially ascertained, and that it had not been paid and was still due and owing, then the court was in condition to enforce the lien, and its merely stating on the face of the order making the judgment and directing a sale of the encumbered property, that it should be done unless the judgment was paid in twenty days, cer

tainly cannot be construed to mean that for this alone it
should be avoided. The court by that act, we take it, did
no more than to suspend enforcing judgment for twenty
days, or during that time by its express direction the sheriff
could not proceed to enforce the judgment by execution.
To the objection that the judgment ought to have described
with accuracy the property sold, it may be, we think, suc-
cessfully replied that doubtless the execution did that, for
there is no copy of it here to show the contrary, and
undoubtedly the clerk might very properly, if the judgment
was defective in this respect, have referred to and used in
the execution the description of the property as covered
by the lien, for doubtless the lien was faithfully described
in the petition, if not actually embraced in it as it might
have been. And especially are we led to this conclusion,
since the court in its confirmation of sale by the sheriff, in
*Anthony* v. *The Foyes*, declares all the proceedings to be
regular. But it was claimed that Amanda E. Foye was
never served with process in the *Anthony* v. *Foye* case,
there is nothing in proof to show that she was, and there is
nothing, we think, in the record as presented here to show
that she was not. Corey says he appeared as her counsel,
and if uncontradicted, as it was, we think, that would be
sufficient; but the journal entries in *Anthony* v. *The Foyes*,
show her appearance and pleading, and that is all-sufficient
in this case, even if it were possible to raise that question
in this collateral proceeding.

This brings us to notice the character of Corey's posses-
sion, though we do not deem it essential to do so in the
decision of this case, for reasons before given. We say
Corey's, for Cook seems to have held in privity with Corey,
and not independently of him. Lee says in his evidence
that he, (Lee), after purchasing, leased to A. L. Foye, from
whom he received possession January 1st, 1876. The
sheriff's sale occurred December 27th, 1875. That *some
time afterwards* he loaned the key to one Parkhurst to re-
move some articles therefrom, that Parkhurst negligently

left it in the door, and Corey, as attorney for H. Booth, took it.   Here, then, is a clear statement from Lee himself, negativing the idea that Corey was a trespasser.   Lee says, Corey's possession was Booth's.   Booth's right of possession was then inchoate, but it became complete so far as the *Anthony* case went, when the court confirmed the sale on the 29th of April, 1876.   Corey says he took the key as counsel for Mrs. Foye.   Corey does not controvert the fact, however, that he took the key, but that in taking it it was to take it for Booth, or that he held it at the time this action was brought for Booth.   He does not deny that though he may have taken the key, and may be in the possession as Mrs. Foye's attorney, yet he does not deny Lee's statement that he took it for Booth; indeed the showing of the outstanding legal title in Booth, coupled with Lee's statement of how Booth got the key, or through whom he got it, raises in our minds the fair presumption that Corey held for Booth, and Cook, holding in privity with him, did the same.

Nor has Corey in this done anything inconsistent with his acting as counsel for the Foyes.   When he took the key is not exactly shown, but he took it after January 1st; the sale was then made and confirmed.   Booth would be let into the premises by the aid of the court, if necessary, upon request, and so taking he doubtless held the key until after the confirmation on February 12, and then either delivered to Booth or held it for him, no doubt as a lawyer for the Foyes, knowing that the sale would be confirmed, or believing it would be, but of his views or opinions it is not necessary to speak.   It is sufficient that he did take, as Mrs. Foye's attorney, and that he doubtless delivered to or held in right of Booth from the time of confirmation, which was right.   It is true Lee speaks of Corey as Booth's attorney, but we think this statement grew out of the fact that Lee knew that Corey delivered the key to Booth, or took it for him, and from this act deduced the relation of attorney and client.   There is nothing in the records of the *Anthony*

v. *Foye* case to establish this relation of attorney and client, and there is nothing in this single act to establish such a relation, and Lee states no other fact that would lead us to infer it, in his testimony, and he could hardly be in position to know of such confidential relation, and so far as either case is here there is nothing to sustain the theory of any such relation between Booth and Corey.

From what has been said, we think it clear that Cook and Corey, the defendants below, were entitled to show, and did show, such an outstanding legal title to the property in controversy in another as tended to defeat, and should defeat, the plaintiff's right of recovery.

But it may be claimed, as it was in 13 Smedes & Marshall, thirty years ago, that if both parties to an ejectment suit claim through one person as a common source, the defendant will not be permitted to set up an incumbrance by such person as an outstanding title. This proposition the supreme court of Mississippi then said was too broad; so say we. The court then say: "The plaintiff in the first instance need go no further than the title of the person under whom they both claim," but say the court, continuing, "the defendant may set up a title adverse to that of such person, and if he does the plaintiff must show such title to be invalid, or produce some superior title or fail." The defendants here have, in our opinion, successfully set up a title adverse to that of the party under whom they both claim, to wit: the title growing out of the incumbrance created by the mechanics' lien, in *Anthony* v. *The Foyes*, and the sheriff's deed consequent upon the judgment and sale. In consequence of these views and this opinion, we hold that the court below committed no error which this court can or should review, reverse or modify in this proceeding, and therefore we are of opinion to affirm the judgment of the court below in all respects, but without the five per cent. allowed in cases of mere dilatory proceedings brought here by writs of error.

Judgment affirmed.

PECK, J., dissenting.

The writ of error was issued to the judge of the second judicial district court, as sitting in and for the county of Uinta: recited that in the record, proceedings and rendition of a judgment in a cause in that court existing before him, between these parties, error was alleged to have been committed; and directed that judge to send up a transcript of the record and proceeding of the judgment: the writ has been answered by the sending up of a transcript under the certificate of J. W. Meldrum, who certifies as the clerk of that court, as a court sitting in and for that county; and that the transcript is complete as to all the proceedings lying in that court; and attaches to his certificate what purports to be the seal of that court for that county. The transcript could be sent up only by the judge of the court wherein the originals lie, as he alone has their custody: hence the writ must issue to that judge. The proceedings narrated in the transcript, purport to have transpired in the second judicial district court, sitting in and for Uinta county. The second judicial district could embrace it only under the act of December 15th, 1877, entitled, "An act to provide for the organization of Crook and Pease counties, and to provide for holding courts therein"—page 34 of the Laws of 1877. The statute assumes to provide for annexing to the latter district the counties of Uinta and Sweetwater, which at its passage constituted the third district; and for the formation of Crook and Pease into a third district: and could have no effect to extend the second district over Uinta and Sweetwater, or over either of them, until the new district had been organized: it has not been organized, nor, because the act is void, can it be organized. Hence in either view the second district does not embrace Uinta county; its files and records do not lie in the court of that district; the clerk of that court could not certify up a transcript of them; its seal could impart no verity to the transcript, and the issuance of the writ to its judge was a

nullity, and there was no second judicial district court, judge, clerk or seal for Uinta county. My reasons for this result are particularly stated in the case of *H. Garbanati* against *Beckwith & Co.*, decided at this term.

As this defect in the writ and its return is jurisdictional and patent, it is not cured by the fact, that it has not been objected to by either party on the hearing: and if the matter stops here, we must dismiss the proceedings of our own motion. But the omission to object, and the treatment of the case as regularly before us are a waiver of the issuance of a proper writ, and of a return to it with a certified transcript, and are equivalent to a formal consent filing of the present transcript, dispensing with a proper writ, return and certificate—a thing which may undoubtedly be done, as a sufficient substitute. This brings us to the merits of the judgment, which appears in the transcript, and of which a review is sought here.

Lee sued Cook and Corey in ejectment in common form for lot No. 8, situate in block No. 4, in the town of Evanston, and county of Uinta, and for the rents and profits; alleging the seizin in fee to be in himself, and a wrongful possession in them: they answered, admitting possession to be in themselves, and denying the residue of the petition. The case was tried by the court without a jury, and judgment rendered for the defendants. There was no conflict in the evidence, and the only question was, and is, as to the legal effect of the facts which resulted from it. They are as follows: A. L. Foye and Amanda E. Foye executed to Lee a deed in fee simple of the premises, which was acknowledged and recorded on November 15th, 1875, was in due form, and sufficient to convey to him whatever estate they then had in them; at and for a considerable time prior to the conveyance, they were in possession of the premises, as in their own right, she as owner, he inferentially as husband; and in pursuance of the conveyance he succeeded them in the possession. On the 17th day of July, 1875, one Anthony recovered a judgment against the

Foyes in the same court, which was entered in the following words: "It is ordered and adjudged that John W. Anthony, have and recover of A. L. Foye and Amanda E. Foye, his wife, the sum of $134.30 and costs taxed at and it is further ordered that, unless said amount be paid within 20 days, the sheriff advertise and sell the property covered by lien; and that the sheriff conform as nearly as may be in the sale of said property, to the law regulating the sale of real estate on execution." The record in that case also shows that at the January term of that court for 1876, Lee moved to set aside the sale herein, and the court, having heard said motion read, and the arguments of counsel having been had, it is ordered that said motion be over-ruled: and that later in the term on an *ex parte* motion by Anthony, the sale was confirmed. The pleadings in the suit were not shown; nor was there anything to indicate that it was for a lien, except the caption of an affidavit for a continuance, which was in the record that was produced to prove the judgment, the captions of the proceedings of several days that were set forth in it, and the judgment. The sheriff executed and delivered to Harvey Booth on the 29th day of April, 1876, a deed of the premises, which recited that by virtue of an execution, dated November 13th, 1875, and issued from and under the seal of the third judicial district court for Uinta county upon a judg-ment rendered in that court on the 17th day of July, 1875, in favor of John W. Anthony against Arnold L. Foye and Amanda E. Foye, said judgment being to satisfy a mechanic's lien, filed against the real estate of the said Foyes, and recorded in Book A, at page 827 of the Uinta County records on the 20th day of September 1873, said execution being directed and delivered to said sheriff, com-manding him to make out of the property of the judgment debtors certain moneys in the writ specified, he, the sheriff, did in obedience to the writ levy on all the estate of the debtors in lot No. 8 in block No. 4 in the town of Evanston and county of Uinta; and on the 27th day of Decem-

ber 1875, sell that estate at public vendue in front of the court house in the county, between nine o'clock in the forenoon and five o'clock in the afternoon, having given notice of the time and place of sale by advertising the same according to law, to Booth, as the highest bidder; and that on the sheriff's return of the sale to said court it was confirmed by the latter at its January term for 1876; and which deed then purported to convey to Booth in fee for the price of the sale, and which was specified in the instrument, all the estate belonging to the Foyes in the premises on the 20th day of September 1873, or at any time afterward, or at the execution of the deed, as fully as he, the sheriff, could convey the same under the writ and the statute. Booth took possession under the deed against the will of the plaintiff; the defendants entered under Booth before the commencement of the action—continued in possession against the plaintiff's demand for it—and were so in possession up to and at the commencement of the action.

The legal result of these facts is simple. Both parties claim under the same—the Foye title; between them it stands as good, and the only question is—which of them get it; the defendants claiming under a title, which, if derived, commenced in a judgment lien that was senior to Lee's deed; for, disconnected with that lien, their attempt to obtain title could commence only in the levy,—there is no evidence that this preceded the delivery of the Lee deed,—and in that case his deed would prevail.

The first suit was to establish a specific lien upon land by a judgment *in rem*, and such a judgment should have consisted of three things: it should have ascertained the amount due the plaintiff as the lien holder, as an absolute debt, to that extent, and in that respect would have been a general and absolute money judgment; should have identified the property which was subject to the lien, and charged the claim upon it; and then have ordered the proper process for executing the claim upon the property. The creditor could then have had an execution, which following the

judgment, would have run specifically against the lien-property : that exhausted, and leaving a *deficit*, he could have had an execution running generally against property subject to process; or, the lien branch of the judgment being but collateral to the rest of the judgment, he could have had a general execution in the first instance,—resorting if necessary, to the lien or special feature of the judgment afterward.

The present judgment does not determine the lien property, but leaves its determination to the sheriff, as a lien judgment is inchoate and a nullity. As a general money judgment it is valid, and stands as if the court had only attempted to render such a judgment; for, though the costs have not been inserted in it, the creditor could waive them.

Can the sheriff's deed be sustained under this general judgment? A title obtained by an official statutory sale, is a matter of strict right, and no essential ingredient can be supplied by presumption; because the sale is arbitrarily regulated and conditioned by, and depends for its validity upon the observance of the statute—is involuntary, easily susceptible of abuse, and, if the statute has been pursued, the party who claims the title is supposed to be always able to show the fact. A valid sale of land under this judgment must, according to the statute, have been made upon a duly issued execution in the absence of personal property subject to process and sufficient to satisfy it, upon the written return of an appraisement, made on actual view by three sworn householders resident within the county, wherein the land was situate, the return to be deposited by the sheriff in the clerk's office of the court whence the process issued—at not less than one half of the appraised value—on a thirty days notice of sale, given by advertisement in a newspaper printed in the county, or, none being so printed, in one of general circulation therein; and unless otherwise ordered by the court, by posting at the door of the court house within the county, or there

being none, at the door of the house where the district court was last held, and by posting in five other places in the county, two of which were within the precinct of the land,—the sale to be at the door of the court house. Comp. Laws, p. 88, sec. 429; Ib. p. 91; secs. 438, 440, 442, 449. These intermediate links were necessary to connect the deed with the judgment, and validate it. If the present sale followed these conditions, the process, appraisment, notice, sale, their necessary accompaniments, and the officer's return, all showing them, should have appeared upon the files of the court. At the common law the affirmative of this proof rested on the defendants, in order to make out their claim of title under the judgment lien. If the deed could have supplied it, it does not. That recites that the sale was made under an execution issued upon the judgment; does not set out the process, and is only the sheriff's legal opinion on the subject; does not show a necessity for resorting to the land by the want of personal property; indeed, indubitably indicates that whatever process he acted under, was issued and was used by him to satisfy the judgment only as a special lien judgment *in rem;* contains no hint that an appraisement had been made; and its recital that the sale was made, "after having given notice of the time and place of sale, by advertising the same according to law," is but his legal opinion of the matter.

Did Lee's motion in the *Anthony* and *Foye* case, to vacate the sale, and the overruling of it, or the subsequent motion for, and order of confirmation, or the Compiled Laws at page 92, and section 444, relieve the defense of this burden of proof? Treating the denial of the first motion as a final order, and construing it as a final adjudication—and this is considering it most favorably for the defense—it could not cut off Lee's right to future resistance to the sale, unless that would be the necessary result of the order. If it was conceded on the hearing that he had the title, unless the sale was regular under the general or the supposed special lien, the only question, to be decided, was as to the regu-

larity of the sale, and it may be hypothetically allowed that the order cut off that right of resistance; but his claim of title may have been opposed irrespectively of the merit of the sale as to regularity; he would then have stood stronger, and been within standing in court to contest in that suit the sale, because his title could only be established in a separate suit, and upon an issue framed for the purpose; and in that. state of the motion there would have been nothing left for the court, but to dismiss the motion, and it must be considered as having denied it accordingly.: the record is equally consistent with the latter, as it is with the former alternative; and that right of resistance was not cut off.

The order of confirmation. It was made on an *ex parte* motion: Lee had been cut off from again appearing; neither of the Foyes had an interest in appearing, and neither of the three appeared: so that the order did not affect that right of resistance.

Section 444. It declares that " the deed shall be sufficient evidence of the legality of such sale, and the proceedings therein, until the contrary be proved   *   *   * and *   *   *   shall recite the execution, or the substance thereof, the names of the parties, the amount and date of the judgment, by virtue whereof" the land was sold. The deed, intended by this provision, is to establish *prima facie* the legality of the sale, and so shift the burden of impeaching the latter to · the opposite party: to have this effect, must contain the prescribed recitals, for they are plainly prescribed as the requisite conditions for that effect. The aim of the section, in providing for recitals sufficient to show these data of the judgment and the tenor or substance of the process, is to make the deed disclose whether the execution issued on and conformed to the judgment. The present deed neither recites the amount of the judgment, nor the tenor or substance of the process, nor indicates what amount was specified in the latter for collection.

The deed is a nullity. As the proofs stand, the Foye

title and possession passed to the plaintiff; he was ousted by the defendants, and should have recovered. The judgment should be reversed, with costs to the plaintiff.